**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GUADALUPE ROSALES-GONZALES,
*Defendant-Appellant*.

No. 14-50286

D.C. No.
3:14-CR-00523-
LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
August 3, 2015—Pasadena, California

Filed September 16, 2015

Before: Dorothy W. Nelson, Barry G. Silverman,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge D.W. Nelson

**SUMMARY**[*]

**Criminal Law**

Affirming a sentence for being a removed immigrant found in the United States, the panel held that a fast-track departure under U.S.S.G. § 5K3.1 is purely discretionary, such that the parties' joint request does not necessitate that the district court grant it.

The panel held that the district court neither committed procedural error nor imposed a substantively unreasonable sentence.

**COUNSEL**

Holly S. Hanover (argued), The Law Offices of Holly S. Hanover, Spring Valley, California, for Defendant-Appellant.

Steven Lee (argued), Special Assistant United States Attorney, Laura Duffy, United States Attorney, and Bruce Castetter, Chief, Appellate Section, Criminal Division, San Diego, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Guadalupe Rosales-Gonzales appeals his 27-month sentence following his guilty plea and conviction for being a removed immigrant found in the United States. Rosales-Gonzales contends that the district court erred in not granting him a fast-track departure, which the parties jointly requested. We hold that the fast-track departure is purely discretionary, such that a joint request does not necessitate departure under the Guidelines. Because Rosales-Gonzales's sentence was substantively reasonable, we affirm the sentencing and judgment.

## I.  Background

On February 4, 2014, U.S. Customs and Border Protection arrested Rosales-Gonzales as a removed immigrant found in the U.S. in violation of 8 U.S.C. § 1326. The government filed a one-count information charging Rosales-Gonzales with violating 8 U.S.C. § 1326. Rosales-Gonzales pled guilty to the charged violation pursuant to a written plea agreement. Under the terms of the plea agreement, the parties agreed to request jointly, among other recommendations, a four-level departure pursuant § 5K3.1 of the Sentencing Guidelines based on Rosales-Gonzales's participation in a fast-track/early disposition program.

On June 9, 2014, the district court held a sentencing hearing. At the outset of the hearing, the district court judge provided what he termed as "preliminary thoughts" on the parties' sentencing recommendations. Specifically, the district court judge noted that he was not inclined to grant the

requested fast-track departure because of Rosales-Gonzales's prior convictions for the same offense and because the requested sentence of nine months' imprisonment would be less than Rosales-Gonzales's previous 14-month sentence for an identical offense. After the government amended its sentencing request to a 15-month term, the district court judge again stated that he was not inclined to "go along with that" and "was not on board with 15 months."

The district court then heard argument from both defense counsel and the government, and permitted Rosales-Gonzales to speak. Defense counsel focused her argument almost entirely on Rosales-Gonzales's physical condition, specifically the effects of a stroke he had suffered. The district court judge then questioned the government about why it had recommended the fast-track departure in a case in which the defendant had been deported 35 times. The government responded that it had considered the sentencing factors set forth in 18 U.S.C. § 3553. The government also noted that Rosales-Gonzales settled his case "in an expedient manner" and waived both indictment and his right to appeal. Following the parties' arguments, the district court judge explained that he agreed with the parties as to the first part of the Guidelines calculation, including that the base offense level was eight, Rosales-Gonzales's four prior felony convictions added four points, but that he had accepted responsibility, which dropped the offense level to ten. The district court also agreed with the parties that Rosales-Gonzales's criminal history category was five, thus, the sentence range would be 21 to 27 months. The district court judge disagreed with the parties, however, that the fast-track departure under § 5K3.1 applied and declined to apply it. The district court judge then determined that an "upper end" Guidelines sentence was warranted and sentenced Rosales-

Gonzales to 27 months' imprisonment. Rosales-Gonzales timely appealed his sentence to this court.

## II. Standard of Review

We analyze challenges to criminal sentences in two steps: First, we "consider whether the district court committed significant procedural error." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Second, "we consider the substantive reasonableness of the sentence." *Id.* Where the district court has "committed a significant procedural error, such as a material error in the Guidelines calculation that serves as the start point for the district court's sentencing decision, we will remand for resentencing pursuant to 18 U.S.C. § 3742(f)." *United States v. Pham*, 545 F.3d 712, 716 (9th Cir. 2008) (internal quotation marks and citation omitted). We review the substantive reasonableness of the sentence for abuse of discretion. *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009).

## III.    Discussion

This case requires us to determine whether a district court must grant a departure under § 5K3.1 of the Sentencing Guidelines for participation in a fast-track program when the parties jointly request this departure. In answering this question, we consider both procedural error and the substantive reasonableness of Rosales-Gonzales's sentence.

### A. Procedural Error

Rosales-Gonzales argues the district court procedurally erred by denying the parties' joint request for the fast-track departure under § 5K3.1 of the Sentencing Guidelines and by

not using the Sentencing Guidelines as its starting point.  We evaluate these arguments in turn.

### 1. Denial of the Fast-Track Departure Under § 5K3.1

Post-*Booker*[1],

> we elect to review the district court's application of the advisory sentencing guidelines only insofar as they do not involve departures.  To the extent that a district court has framed its analysis in terms of a downward or upward departure, we will treat such so-called departures as an exercise of post-*Booker* discretion to sentence a defendant outside of the applicable guidelines range.

*United States v. Mohamed*, 459 F.3d 979, 987 (9th Cir. 2006); *see also United States v. Vasquez-Cruz*, 692 F.3d 1001, 1008 (9th Cir. 2012) (reaffirming that departures are reviewed as part of the substantive reasonableness analysis and not for procedural error).  As such, "we do not need to consider whether the district court correctly applied [the relevant departure provision]; rather, we review the district court's deviation from the applicable guidelines range for reasonableness." *United States v. Tankersley*, 537 F.3d 1100, 1114 (9th Cir. 2008); *see also United States v. Blixt*, 548 F.3d 882, 890–91 (9th Cir. 2008) (reviewing the district court's denial of a downward departure under § 5K2.13 of the

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

Sentencing Guidelines only as part of the substantive reasonableness analysis).

Thus, our case law is clear that we do not review the denial of a departure under § 5K of the Sentencing Guidelines for procedural error. *See United States v. Ellis*, 641 F.3d 411, 420–21 (9th Cir. 2011). Accordingly, we reject Rosales-Gonzales's argument that the district court committed procedural error by declining to grant him a four-level downward departure under § 5K3.1. We address his additional arguments concerning the denial of this departure below in our analysis of the substantive reasonableness of his sentence.

### 2. Sentencing Guidelines as the "Starting Point"

The Sentencing Guidelines establish a three-step procedure that district courts must follow in determining the proper sentence: (1) calculate the appropriate Guidelines range, including the offense level and criminal history category of the defendant; (2) consider any applicable departures under § 5H or § 5K of the Guidelines; and (3) consider the factors enumerated in 18 U.S.C. § 3553(a). U.S. Sentencing Guidelines Manual § 1B1.1 (2014); *see also United States v. Lee*, 725 F.3d 1159, 1165 n.5 (9th Cir. 2013) (per curiam) (same). The Supreme Court has held that even though the Sentencing Guidelines are advisory only, district courts must use the Guidelines as the "starting point" for determining a sentence. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 49 (2007). While the district court may impose a sentence outside the Guidelines range, "it may not manipulate the calculations under the Sentencing Guidelines in order to produce a Guidelines range that will allow it to impose the sentence it prefers." *Lee*, 725 F.3d at 1164.

Although Rosales-Gonzales contends his case is analogous to *Lee*, we find the facts sufficiently distinguishable to conclude the district court did not err. In *Lee*, the district court began by finding a base offense level of 38. 725 F.3d at 1162. The probation officer then recalculated the defendant's offense level as 35, based on a three-level reduction for acceptance of responsibility, resulting in a sentencing range of 188–235 months and a mandatory minimum of 120 months. *Id.* The government subsequently moved for a ten-level reduction under § 5K1.1 based on the defendant's substantial assistance and requested a 96-month sentence. *Id.* at 1163. The district court granted the request for a reduction under §5K1.1. *Id.* The district court then incorrectly calculated the defendant's new offense level after the departure as 28, and, also incorrectly, stated that the appropriate Guidelines range was 78–97 months. *Id.* Before the court could impose the final sentence, the probation officer interrupted to explain that, with a ten-level departure, the defendant's offense level was actually 25, not 28, resulting in a Guidelines range of 63–78 months, so a sentence exceeding 78 months would be an above-Guidelines sentence. *Id.* at 1163–64. The government then stated that "it believed '96 months was appropriate, whatever level one has to depart to, to get that.'" *Id.* at 1164. Thereafter, the district court granted the government's amended request for a seven-level departure—resulting in a Guidelines range of 87–108 months—and sentenced the defendant to 96 months' imprisonment. *Id.* Thus, the district court appeared to manipulate the Guidelines range to impose a 96-month sentence.

Here, however, the district court did not engage in calculation or recalculation in an attempt to get to a specific sentence requested by the government or preferred by the

district court. The district court judge noted that he had reviewed the parties' filings, including the request for the fast-track departure, but stated, from the outset, that he did not believe Rosales-Gonzales was entitled to the fast-track departure. The district court then heard argument from both parties, as well as Rosales-Gonzales's statement, before imposing the final sentence. In doing so, the court first calculated an offense level of 10 and a criminal history category of 5, resulting in a Guidelines range of 21–27 months, a calculation that Rosales-Gonzales does not dispute. The court explained that it disagreed with the government's assessment that Rosales-Gonzales qualified for the fast-track departure and declined to apply it to his sentence.[2] The court concluded that the § 3553(a) factors warranted an "upper end" Guidelines sentence and imposed a 27-month prison term.

Although at times the district court judge indicated he would not sentence Rosales-Gonzales to 15 months or fewer—stating he would not "go along with that" and "was not on board with 15 months"—the court also expressed that his thoughts were preliminary and provided the parties an opportunity to argue. Of course, simply terming a predetermination as a "preliminary thought" would not be sufficient, on its own, to distinguish this case from *Lee* in a

---

[2] The district court based much of its reasoning on a memorandum from the Department of Justice to United States Attorneys regarding when fast-track departure is applicable. *See* Memorandum for All United States Attorneys from James M. Cole, Deputy Attorney General (Jan. 31, 2012), *available at* http://www.justice.gov/dag/fast-track-program.pdf. Rosales-Gonzales has not challenged the district court's reliance on this memorandum. Additionally, the factors discussed by the memorandum, at least as noted by the district court, overlap significantly with the § 3553(a) factors.

meaningful way. However, we do not find the district court's phrasing here to be disingenuous. The district court calculated the proper Guidelines range at step one, considered the applicable fast-track departure but declined to grant it at step two, and evaluated the § 3553(a) factors at step three. The district court did not commit procedural error.

## B.  Substantive Reasonableness

Rosales-Gonzales challenges the reasonableness of his sentence based on the denial of the fast-track departure and the "parsimony principle" of 18 U.S.C. § 3553(a). *United States v. Chavez*, 611 F.3d 1006, 1009, 1010 (9th Cir. 2010) (per curiam). Although we have explained that sentences involving departures are "subject to a unitary review for reasonableness," *Mohamed*, 459 F.3d at 987, we analyze his arguments related to the fast-track departure separately to clarify the nature of the departure and provide guidance for future cases.

### 1.  Denial of the Fast-Track Departure Under § 5K3.1

Rosales-Gonzales principally argues that the district court lacked discretion to deny the fast-track departure under § 5K3.1. Specifically, Rosales-Gonzales urges us to read *United States v. Gonzalez-Zotelo*, 556 F.3d 736 (9th Cir. 2009), as prohibiting district courts from denying a properly-requested fast-track departure. We disagree and hold that district courts retain discretion to reject fast-track departures under § 5K3.1 of the Sentencing Guidelines.

As noted, we have declined to consider whether a district court has properly granted or denied a departure under § 5K

of the Sentencing Guidelines post-*Booker*. *See, e.g.*, *Blixt*, 548 F.3d at 890–91. Further, we have explained that "[t]he old departure scheme is relevant today only insofar as factors that might have supported (or not supported) a departure may tend to show that a non-guidelines sentence is (or is not) reasonable." *Tankersley*, 537 F.3d at 1114. We have described all departures as "exercise[s] of *discretion*," *Mohamed*, 459 F.3d at 986, and we have not found, nor could counsel identify, any other departures under § 5K that we have treated as mandatory.

In addition, the statutory text at issue supports our view. The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act of 2003, which implements the fast-track departure, reflects no indication that Congress intended the departure to be mandatory. As is relevant here, the PROTECT Act provides only that the Sentencing Commission must promulgate "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Pub. L. No. 108–21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003). Additionally, the language of § 5K3.1 itself provides that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program," again indicating that the court retains discretion to decide whether or not to grant the departure. U.S.S.G. § 5K3.1.

Moreover, Rosales-Gonzales's reliance on *Gonzalez-Zotelo* is misplaced. In that case, we held that the district court committed plain error by granting the defendant a four-level fast-track departure even though the government had not

requested one. 556 F.3d at 741. We explained that district courts may consider only unwarranted sentencing disparities. *Id.* at 739. Sentencing disparities between fast-track and non-fast-track defendants under 18 U.S.C. § 3553(a)(6) are not unwarranted because the differences in those sentences "are justified by the benefits gained by the government when defendants plead guilty early in criminal proceedings." *Id.* (internal quotation marks omitted). We held that while the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007), allows district courts to depart from the Guidelines based on a disagreement with Guidelines policy, it does not allow district courts to sentence in contravention to congressional policy. *Gonzalez-Zotelo*, 556 F.3d at 740–41.

However, where a district court denies a jointly requested fast-track departure, the district court does not contravene the congressional policy at issue in *Gonzalez-Zotelo*. The relevant congressional policy in *Gonzalez-Zotelo* was that Congress had authorized the fast-track program and, thus, had authorized disparities between fast-track and non-fast-track defendants, such that consideration of these disparities was improper. *See* 556 F.3d at 739–40. *Gonzalez-Zotelo*, thus, says nothing about whether congressional policy dictates that the particular departure at issue here—the fast-track departure itself—is mandatory upon motion of the government or upon joint recommendation of the parties. On this point, the Second Circuit's recent decision in *United States v. Shand*, 739 F.3d 714 (2d Cir. 2014) (per curiam), is instructive. In *Shand*, the defendant similarly argued that the district court lacks discretion to deny a fast-track departure when the government properly requests it. *Id.* at 715. The Second Circuit rejected this argument, relying mainly on the text of the § 5K3.1, explaining that the permissive use of "may"

distinguished this section of the Guidelines from other mandatory ones. *Id.* at 715–16.

We also reject Rosales-Gonzales's arguments that allowing district courts to deny fast-track departures would interfere with prosecutorial discretion or have a chilling effect on plea bargaining. Rosales-Gonzales's plea agreement was made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), which provides that the government will "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular . . . policy statement . . . does or does not apply (such a recommendation or request does not bind the court)." Even where the parties make a joint recommendation for a sentence in such cases, the district court may nevertheless exercise its discretion to reject the joint recommendation. *See, e.g.*, *United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001). Thus, we see no reason why the rejection of a sentencing proposal recommending a fast-track departure would uniquely interfere with prosecutorial discretion or chill the plea bargaining process.

This is not to say, however, that a district court can simply ignore the fast-track departure, or other discretionary departures under § 5K of the Sentencing Guidelines. As we have previously noted in the context of accepting or rejecting plea agreements, "the existence of discretion requires its exercise, and when a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised." *In re Morgan*, 506 F.3d 705, 712 (9th Cir. 2007) (internal quotation marks, alterations, citations omitted). Just as it would be an abuse of discretion for a district court judge to have a blanket policy against accepting plea agreements with binding sentences

incorporating the fast-track departure, *see United States v. Gonzalez*, 502 F. App'x 665, 667 (9th Cir. 2012), so too would it be an abuse of discretion for a district court judge to implement a blanket policy against granting recommended fast-track departures in plea agreements with non-binding sentences, *cf. United States v. Odachyan*, 749 F.3d 798, 804–05 (9th Cir. 2014) (Reinhardt, J., concurring) (explaining that a district court judge's statement indicating the judge considered the defendant to be part of a group of immigrants that "prey on this government's institutions" was adverse to § 3553(a)'s requirement of an individualized determination at sentencing).    Though counsel for Rosales-Gonzales contended that the district court judge here was more reticent than other judges to grant the fast-track departure, she conceded—and the record does not contradict—that the district court judge does not have a blanket policy of denying the fast-track departure.

### 2.  Parsimony Principle

Under 18 U.S.C. § 3553(a), the district court shall "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  This provision, also known as the "parsimony principle" or "'parsimony clause,'" "is a guidepost, an overarching principle that directs judges in the appropriate exercise of their sentencing discretion within the sentencing range authorized and consideration of factors prescribed by Congress." *Chavez*, 611 F.3d at 1010.  As such, challenging a sentence as violating the "parsimony principle" is simply another way of stating that the sentence is unreasonable. *See United States v. Crowe*, 563 F.3d 969, 977 n.16 (9th Cir. 2009).

The district court properly considered the relevant § 3553(a) factors and did not abuse its discretion in sentencing Rosales-Gonzales to 27 months' imprisonment. In discussing whether to grant the fast-track departure and determining the proper sentence, the district court properly considered Rosales-Gonzales's past criminal and immigration history. *See* 18 U.S.C. §§ 3553(a)(1) ("the history and characteristics of the defendant"), 3553(a)(2)(A) ("to promote respect for the law"), 3553(a)(2)(B) ("to afford adequate deterrence to criminal conduct"). The district court also heard argument from defense counsel regarding Rosales-Gonzales's health, asked questions about his physical condition, and considered these issues in determining the sentence. Ultimately, the district court weighed in Rosales-Gonzales's favor the fact that he was not a dangerous criminal. However, the district court weighed Rosales-Gonzales's multiple felony convictions for this same offense and multiple removals against him. The district court also found the need to deter future criminal activity warranted an "upper end" Guidelines sentence. Thus, the district court imposed a 27-month sentence.

Rosales-Gonzales's further arguments lack merit. First, he contends that the court misunderstood the deterrent value of an increased sentence. In other words, the district court reasoned that the prior sentence did not work because it did not deter Rosales-Gonzales from committing the same crime. Thus, the court imposed a harsher sentence to deter him from reentering the country illegally. Rosales-Gonzales mentions empirical evidence that undermines this reasoning, though he does not appear to have presented this evidence to the district court, nor does he ask us to take judicial notice of it. Moreover, this argument does not account for the fact that the longer sentence imposed in this matter resulted largely from

a Guidelines calculation that takes into account criminal history. Here, the Guidelines range was 21–27 months based on the applicable offense level and criminal history category. *See United States v. Gonzalez Vazquez*, 719 F.3d 1086, 1089 (9th Cir. 2013) (discussing criminal history in sentencing).

Second, Rosales-Gonzales argues that the district court failed to take into account "the real conduct and circumstances," at issue, *Gall*, 552 U.S. at 54 (internal quotation marks and citation omitted), and instead focused on imposing a higher sentence than Rosales-Gonzales had received in a previous case. The record belies this claim. As explained, the district court evaluated the § 3553(a) factors and considered the relevant circumstances.

Finally, Rosales-Gonzales posits that his sentence was longer than necessary to protect the public. This contention fails to account for his recidivism. In sum, Rosales-Gonzales has not established that his within-Guidelines sentence was unreasonable. *See Carty*, 520 F.3d at 994 (noting "a Guidelines sentence 'will usually be reasonable'" (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

## IV.    Conclusion

The district court neither committed procedural error nor imposed a substantively unreasonable sentence. The district court had discretion to reject the parties' joint request for a four-level departure under § 5K3.1 of the Sentencing Guidelines for Rosales-Gonzales's participation in a fast-track program, and the district court properly considered the § 3553(a) sentencing factors.

**AFFIRMED.**